## GEORGE C. STOOLFIRE

*v.*

## HIRAM A. ROYSE.

1. CONTRACT—*mutual and dependent covenants.* Where the plaintiff purchased cattle of the defendant, to be delivered at a certain time, and to be paid for by the assignment of notes, and a mortgage securing them, executed by a third party to the plaintiff, the delivery of the cattle and the assignment and delivery of the notes and mortgage were mutual and dependent acts, to be performed simultaneously, and neither was obliged to perform until the other did, nor could either put the other in default without performing or being able to perform, and tendering performance.

2. By such a contract, the defendant did not contract merely for the paper upon which the mortgage was written, but for the security represented thereby, and if, after the execution of the mortgage by the mortgagor, and before it was recorded, he had conveyed to an innocent purchaser without notice, a portion of the mortgaged property, and that conveyance was in full force and uncancelled at the time for the delivery of the cattle by the defendant, and the delivery of the notes and mortgage to him by the plaintiff, then the plaintiff was not in a condition to comply with his contract, and the defendant was not obliged to deliver the cattle.

3. INSTRUCTION—*measure of damages.* The refusal of the court to give an instruction asked by the plaintiff as to the measure of damages only, although it may contain correct propositions of law, is not ground for reversal, when the jury find that there are no damages at all.

WRIT OF ERROR to the Circuit Court of DeWitt county; the Hon. JOHN M. SCOTT, Judge, presiding.

Mr. W. E. NELSON, and Mr. JOHN W. SMITH, for the plaintiff in error.

Mr. S. G. MALONE, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of covenant on an agreement by plaintiff to purchase and defendant to sell 160 steers, the choice of plaintiff, to be selected out of 190 head then held by defendant. The cattle were to be delivered by the 1st of Novem-

ber, 1866, and to be paid for at $4\frac{1}{2}$ cents per pound, in notes and a mortgage given by one Wingate to plaintiff, amounting to $9180, and defendant covenanted to pay plaintiff $1000 on demand, and to pay the balance due on the notes and mortgage by the 1st of July, 1867.

The cattle were not delivered or even tendered on the 1st day of November, 1866. The agreement was signed in the name of plaintiff, by one Mathews, as his agent, which provided it was to be void unless plaintiff should notify defendant of his approval. It appears that the agent, in June subsequent to entering into the contract, demanded the $1000, which was refused. Other efforts were made to close up the matter, but failed.

The son of plaintiff testified that he went, on the 1st of November, to the place where the cattle were being herded, and also to defendant's house, to make a demand of the cattle, but did not find him at either place.

Mathews testifies that it was agreed the papers should be left with the First National Bank, at Decatur, and if the contract was ratified, the cashier should notify defendant. He also states he left the papers at the bank within two weeks, and notified defendant by letter that the contract had been ratified by plaintiff. But there is no evidence that the cashier ever gave any notice, and defendant denies, in his testimony, that he ever received notice.

Defendant claimed that he was exonerated from a compliance with the contract, because the mortgagor had sold 20 acres of the mortgaged premises before the mortgage was recorded by plaintiff. There was conflicting evidence as to the value of the cattle at the time fixed for the delivery, plaintiff's witnesses fixing the price above that of the agreement, whilst defendant and his witnesses fix it as low or lower than the contract price. On this, as well as other questions, there was an irreconcilable conflict in the evidence, and the jury found for defendant.

After a careful examination of all the evidence in the case, we are unable to say that it fails to support the verdict. If the mortgagor, after making the mortgage, and before it was recorded, sold a portion of the land, the presumption would be that the purchaser had acted in good faith, until the contrary was shown. And before defendant was bound to comply, plaintiff was bound to be able to perform his part of the contract. If we concede that plaintiff was only bound to be in such a position on the 1st of November, still there is no evidence that plaintiff had cancelled the conveyance of the part of the premises thus sold. Nor did he show that the purchaser had notice of the mortgage when he received his deed. Defendant did not intend to purchase the mere paper on which the mortgage was written, but to obtain the security for the payment of the notes, and he could not be compelled to take a mere assignment of the instrument. Suppose the mortgagor had sold the entire premises, would not all persons say it would be a mere evasion to insist that defendant should go on and carry out his contract and obtain no security? The entire benefit of the mortgage, as made, was sold, and, inasmuch as plaintiff failed to record the mortgage before the sale was made, defendant could not be compelled to receive but a part of what he had contracted to receive.

The evidence fails to show that plaintiff was ever able, willing or offered to perform his part of the contract. He did not tender the notes and mortgage assigned, so as to vest the title in defendant in error. If it be, however, said that defendant was not found on the day the contract was to be performed, there is no evidence that the agent had with him the notes and mortgage, ready to be delivered, nor does the agent say he intended to deliver or tender them to defendant. These covenants were mutual and dependent, and were required by the law to be simultaneously performed by the parties. Defendant was not bound to deliver the cattle until the notes and mortgage were delivered to him. Even if defendant failed, wrongfully, to pay the $1000 when demanded, still

15—71st ILL.

plaintiff should have been ready, willing, and have offered to perform before he was entitled to the cattle, or before he could put the other party in default, so as to recover damages. So, whether we consider the legal rights of the parties or the evidence as to the price of the cattle, we fail to see that the judgment should be reversed.

Although the instruction asked by defendant, and refused, was a correct abstract proposition of law, and it would not have been error to have given it, still, on the facts in this case, the refusal is not a ground for a reversal. Had the verdict been the other way, on the facts, then it would have been proper for the consideration of the jury. It would have been proper as indicating the measure of damages, but the jury found there was none, and hence an instruction as to the measure of damages became entirely immaterial and useless. There was no error in this action of the court.

The judgment of the court below is affirmed.

*Judgment affirmed.*